FILED

JAMES J. VILT, JR. - CLERK

APR 16 2025

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA

v.

**JOSE MALAGON CASTRO (1- 25)**
**VANESSA AVILA GALAVIZ (1, 4)**
**JOSE MARTIN ROMERO (1-4)**
**YEIMI HERNANDEZ BARAHONA (1, 3)**
**KENIA HERNANDEZ BARAHONA (1-10)**
**KELIN HERNANDEZ BARAHONA (1-4)**
**SURI ROSMERI HERNANDEZ DEL CID (1-2, 11-17)**

INDICTMENT

NO. 3:25 CR 70 CHB

18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)
18 U.S.C. § 1956(a)(2)
18 U.S.C. § 1956(a)(3)
18 U.S.C. § 922(g)(5)(A)
18 U.S.C. § 924(a)(8)
18 U.S.C. § 982(a)(1)
18 U.S.C. § 2

The Grand Jury charges:

## INTRODUCTION

At all times relevant to this Indictment:

*The Defendants*

    1.    Defendant **JOSE MALAGON CASTRO** ("CASTRO"), a citizen of Mexico, resided in the Western District of Kentucky, and was the true owner and operator of **Malagon LLC**, dba **EL REY MARKET I** ("EL REY I"), located at 7600 National Turnpike in Louisville, KY; **Malagon LLC**, dba **EL REY MARKET II** ("EL REY II"), at 8655 Preston Highway, Louisville, KY; and **Malagon LLC**, dba **EL REY MARKET III** ("EL REY III"), at 8023 Dixie Highway, Louisville, KY, all within the Western District of Kentucky.

    2.    Defendants **VANESSA AVILA GALAVIZ** ("VANESSA") and **JOSE MARTIN ROMERO** ("ROMERO"), citizens of Mexico, along with other individuals known and unknown to the Grand Jury, were narcotics traffickers, who directed monetary wire transfers conducted at

**EL REY I**, **EL REY II**, and **EL REY III** that were sent to beneficiaries in Mexico, which wire transfers involved the transfer of proceeds related to illegal trafficking of controlled substances.

3.    Defendants **KENIA HERNANDEZ BARAHONA** ("KENIA"), **KELIN HERNANDEZ BARAHONA** ("KELIN"), and **YEIMI HERNANDEZ BARAHONA** ("YEIMI"), citizens of Honduras, along with Defendant **SURI ROSMERI HERNANDEZ DEL CID** ("SURI"), citizen of Guatemala, resided in Louisville, Kentucky, and were employed by **CASTRO** to be cashiers and to conduct wire transfers and check cashing at **EL REY I** and **EL REY II**.

4.    As used herein, **EL REY I**, **EL REY II**, and **EL REY III** comprised the **CASTRO** Money Laundering Organization ("**CASTRO MLO**").

***Money Service Businesses (MSBs)***

***Background:***

5.    The United States Department of Treasury, Financial Crimes Enforcement Network ("FinCEN"), defines a money services business ("MSB") as "a person wherever located doing business, whether or not on a regular basis or as an organized or licensed business concern, wholly or in substantial part within the United States," operating directly, or through an agent, agency, branch, or office, who functions as, among other things, a "money transmitter."

6.    FinCEN regulations define the term "money transmitter" to include a "person that provides money transmission services," or "any other person engaged in the transfer of funds."

7.    The term "money transmission services" is defined, in part, to mean the acceptance of currency or funds from one person and the transmission of currency or funds to another location or person by any means.

8.    As used herein, MSB refers to the principal or corporate MSB entity, and "MSB agent" refers to the **CASTRO MLO** stores that were authorized by MSBs to act as money transmitters and provide money transmission services.

9.    The Bank Secrecy Act (BSA) and its implementing regulations required MSBs to develop, implement and maintain an effective written anti-money laundering program ("AML program") that was reasonably designed to prevent the MSB from being used to facilitate money laundering and the financing of terrorist activities. The BSA required that the MSBs' AML program, at a minimum: (a) incorporate policies, procedures and internal controls reasonably designed to assure ongoing compliance (including verifying customer identification, filing reports, creating and retaining records and responding to law enforcement requests); (b) designate an individual responsible to assure day-to-day compliance with the program and BSA requirements; (c) provide training for appropriate personnel, including training in the detection of suspicious transactions; and, (d) provide for independent review to monitor and maintain an adequate program. 31 C.F.R. § 1022.210.

10.    To assure that an AML compliance program is reasonably designed to meet the requirements of the BSA, the BSA requires that MSBs structure their programs to be risk-based. That is, MSBs are required under the BSA to assess their individual exposure to the risk of money laundering, terrorism finance, and financial crime based on the composition of customer base, the geographies served, and the financial products and services offered. MSBs must properly manage customer relationships and effectively mitigate risks by implementing controls commensurate with those risks. As part of its risk assessment, an agent of an MSB, if so designated by the MSB, is required to determine both the identity and the profile of its

customers and know enough about their customers to be able to determine the risk level they represent to the institution.

***The Process***

11.     Although **EL REY I**, **EL REY II**, and **EL REY III** offered various goods and services to their customers, the **CASTRO MLO** operated largely to assist customers in electronically transmitting funds internationally, primarily to Mexico.   To transmit customers' funds internationally, all three stores entered into agency agreements with various MSBs, including RIA Financial, IDT Payment Services ("Boss Revolution"), Viamericas, and Intercambio Express ("Intercambio"). The MSBs specialized in electronically wiring money and had agent locations throughout the United States and other countries.

12.     In practice, individuals seeking to use money transmission services bring funds to an MSB agent location, such as the **CASTRO MLO**, which is connected to an MSB via a computer terminal or by a direct telephonic connection. The MSB agent location collects the funds along with certain information from the customer (sender), such as the sender's name, address, and telephone number. The customer will also provide the name of the beneficiary (recipient), as well as the beneficiary's city, state and country. At the **CASTRO MLO** agent locations, the customer (sender) provides this information directly to an employee, to include Defendants **CASTRO**, **YEIMI**, **KENIA**, **KELIN**, and **SURI**, who then entered the information into the MSB computer system.

13.     The MSB charged customers a fee for using their services.  The money generated from this fee was split between the MSB agent that processed the customer's transaction and the MSB.

14.    After the information was collected and submitted, the customer (sender) provides the funds, including the transaction fee to the MSB agent in cash. Subsequently, the MSB agent provides the customer with a receipt detailing all the previously provided information regarding the sender, the beneficiary, and the financial institution, as well as the name of the MSB agent location, the MSB used, the date and time the wire transfer was sent, and a unique transaction number, sometimes called a Money Transfer Control Number, or MTCN. The customer is responsible for providing the MTCN to the beneficiary (recipient) as it is required for the wire transfer to be paid out in the receiving MSB agent location.

15.    MSB agents generally deposit into a bank the funds, usually cash, the MSB collected to conduct money transmission services. In sum, the MSBs and their agents provide a means for customers to securely and rapidly transmit funds throughout the world. During the period of the conspiracy as described below, Defendants **CASTRO, YEIMI, KENIA, KELIN**, and **SURI**, through the **CASTRO MLO** agent locations, wired funds internationally using the MSB's electronic wiring systems.

***CASTRO MLO Stores***

16.    During the period of the conspiracy, **EL REY I** served as an agent for the following MSBs:

| Money Service Business (MSB) | Approximate Dates of Service |
| --- | --- |
| Intercambio | 2020 - 2024 |
| Viamericas | 2020 |

17.    During the period of the conspiracy, **EL REY II** served as an agent for the following MSBs:

| Money Service Business (MSB) | Approximate Dates of Service |
| --- | --- |
| Intercambio | 2020 - 2024 |
| RIA Financial | 2020-2022 |

5

18.     During the period of the conspiracy, **EL REY III** served as an agent for the following MSBs:

| Money Service Business (MSB) | Approximate Dates of Service |
|---|---|
| Intercambio | 2022 - 2024 |
| Boss Revolution | 2022- At least 2023 |

19.     Between 2020 and 2024, Defendants **CASTRO**, **YEIMI**, **KENIA**, **KELIN**, **SURI**, **VANESSA**, and **ROMERO**, along with other individuals known and unknown to the Grand Jury, used the **CASTRO MLO** stores to transmit approximately $34.7 Million through the MSBs' electronic wiring systems. These wires were in amounts between approximately $500 and approximately $4,585 and were directed to beneficiaries in Mexico, to include the Mexican states of Nayarit, Jalisco, Aguascalientes, Chiapas, Michoacan, and Sinaloa.

## COUNT 1
*(International Money Laundering Conspiracy)*

20.     The factual allegations contained in Paragraphs 1 through 19 of the Introduction Section of this Indictment are re-alleged and incorporated herein as if copied verbatim.

21.     Beginning on a date unknown, but at least as early as January 2020 and continuing until at least December 2024, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, the defendants, **JOSE MALAGON CASTRO, VANESSA AVILA GALAVIZ, JOSE MARTIN ROMERO, YEIMI HERNANDEZ BARAHONA, KENIA HERNANDEZ BARAHONA, KELIN HERNANDEZ BARAHONA,** and **SURI ROSMERI HERNANDEZ DEL CID,** did knowingly combine, conspire, and agree with each other and other persons, known and unknown to the Grand Jury, to commit offenses against the United States, in violation of Title 18, United States Code, Section 1956, that is, to knowingly conduct, and attempt to conduct, financial transactions affecting interstate and foreign commerce, knowing that the transactions

6

were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity (SUA), and knew that the international movement thereof were so designed, that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Sections 1956(h), 1956(a)(1), and 1956(a)(2).

**<u>Manner and Means</u>**

22.     Defendants  **VANESSA AVILA GALAVIZ, JOSE MARTIN ROMERO,**  and other narcotics traffickers, known and unknown to the Grand Jury, brought cash from the sale of various narcotics (also referred to as "drug proceeds") to the **CASTRO MLO** stores for the purpose of transmitting the drug proceeds from the United States to multiple beneficiaries and locations in Mexico.

23.     Defendants  **VANESSA AVILA GALAVIZ, JOSE MARTIN ROMERO,** and other narcotics traffickers, known and unknown to the Grand Jury, often kept lists and IDs of senders and beneficiaries to provide to the **CASTRO MLO** stores.  These lists included completely fabricated information to be used for wire transfers listing false senders as well as copies of their IDs, smaller wire amounts, and the names and information related to the beneficiaries or recipients of the funds in Mexico.  At other times, the only information, if any, provided by Defendant  **VANESSA AVILA GALAVIZ, JOSE MARTIN ROMERO,** and other narcotics traffickers, were just the names and information related to the beneficiaries in Mexico.

24.     Defendants  **CASTRO, YEIMI, KENIA, KELIN,** and **SURI** then helped Defendants **VANESSA AVILA GALAVIZ, JOSE MARTIN ROMERO,** and other narcotics

7

traffickers conceal the source of the funds by listing false sender names, addresses, and telephone numbers on the wires.

25.     Defendants **CASTRO, YEIMI, KENIA, KELIN,** and **SURI** also intentionally "split" the wires into smaller amounts to evade detection from the MSBs' internal compliance programs and to avoid reporting requirements.

26.     On occasion, after receiving large sums of cash from Defendants **VANESSA AVILA GALAVIZ, JOSE MARTIN ROMERO,** and other narcotics traffickers, Defendants **CASTRO, YEIMI, KENIA, KELIN,** and **SURI** also spread out the timing of the monetary wire transfers, which meant processing the transactions when these individuals were not present in direct violation of BSA rules and regulations and MSB policy and procedures.

27.     From in or about March of 2020 through in or about December of 2024, the **CASTRO MLO** stores conducted or attempted to conduct approximately 761 monetary wire transfers to Jalisco and Aguascalientes, Mexico on behalf of Defendants **VANESSA AVILA GALAVIZ, JOSE MARTIN ROMERO** and others associated with their drug trafficking organization.

28.     Once the monetary wire transfer was complete, Defendants **CASTRO, YEIMI, KENIA, KELIN,** and **SURI** shared the receipts between each other and ultimately provided the receipts to Defendants **VANESSA AVILA GALAVIZ, JOSE MARTIN ROMERO,** and other narcotics traffickers, known and unknown to the Grand Jury, which included false sender names, addresses, phone numbers, and the beneficiary information provided by the narcotics traffickers.

29.     On behalf of the **CASTRO MLO** stores, Defendant **CASTRO** deposited, or directed to be deposited, the cash received from **VANESSA AVILA GALAVIZ, JOSE MARTIN ROMERO,** and other narcotics traffickers, known and unknown to the Grand Jury

into designated bank accounts for the purposes of paying the MSBs that transmitted the funds to agent locations in Mexico.

All in violation of Title 18, United States Code, Sections 1956(h), 1956(a)(1), and 1956(a)(2).

The Grand Jury further charges:

COUNTS 2-4<br>(<em>Money Laundering</em>)

30.     Beginning on a date unknown, but at least as early as 2020 and continuing until December 2024, including the dates set forth below, in the Western District of Kentucky, the Defendants, **JOSE MALAGON CASTRO, VANESSA AVILA GALAVIZ, JOSE MARTIN ROMERO, YEIMI HERNANDEZ BARAHONA, KENIA HERNANDEZ BARAHONA, KELIN HERNANDEZ BARAHONA,** and **SURI ROSMERI HERNANDEZ DEL CID,** as identified below aided and abetted by each other and others known and unknown by the Grand Jury, knowingly conducted and attempted to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, to wit, the proceeds from the sale and distribution of a controlled substance, in violation of Title 21 United States Code, Section 841(a)(l), knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transactions, that is, the funds, in the approximate amounts listed below, represented the proceeds of some form of unlawful activity:

| Counts | Date of Offense | MSB AGENT | Defendant(s) | Financial Transaction |
|---|---|---|---|---|
| 2 | 08/06/2024 - 08/07/2024 | EL REY I & EL REY II | MARTIN ROMERO, CASTRO, KENIA, SURI, KELIN | Delivery and transfer of SUA proceeds approximately $27,849 |
| 3 | 08/09/2024 - 08/11/2024 | EL REY I & EL REY II | MARTIN ROMERO, CASTRO, YEIMI, KENIA, KELIN | Delivery and transfer of SUA proceeds approximately $24,909 |
| 4 | 08/30/2024 | EL REY I | MARTIN ROMERO, CASTRO, KENIA, VANESSA, KELIN | Delivery and transfer of SUA proceeds approximately $9,284 |

All in violation of Title 18, United States Code, Sections, 1956(a)(1), and 2.

The Grand Jury further charges:

COUNTS 5-24
(*Money Laundering Sting*)

31.    On or about and between April 23, 2024, and May 2, 2024, in the Western District of Kentucky, Jefferson County, Kentucky, the defendants, **JOSE MALAGON CASTRO, KENIA HERNANDEZ BARAHONA**, and **SURI ROSMERI HERNANDEZ DEL CID**, aided and abetted by each other and others known and unknown to the Grand Jury, knowingly conducted financial transactions, that is, the funds, in the approximate amounts listed below, with an alleged narcotics trafficker with the intent to promote the carrying on of a specified unlawful activity; and to conceal or disguise the nature, location, source, ownership, and control of property represented to be the proceeds of specified unlawful activity, to wit, the proceeds from the sale and distribution of a controlled substance; and to avoid a transaction reporting requirement under State and Federal law, in violation of Title 18, United States Code, Section 1956(a)(3).

| Counts | Date of Offense | MSB Agent | Defendant(s) | Transaction Number | Financial Transaction |
|--------|-----------------|-----------|--------------|--------------------|-----------------------|
| 5 | 04/23/2024 | EL REY I | CASTRO & KENIA | US122763610 | Wire Transfer of $2,870 |
| 6 | 04/23/2024 | EL REY I | CASTRO & KENIA | US122763652 | Wire Transfer of $2,850 |
| 7 | 04/23/2024 | EL REY I | CASTRO & KENIA | US122763712 | Wire Transfer of $2,890 |
| 8 | 04/23/2024 | EL REY I | CASTRO & KENIA | US122763844 | Wire Transfer of $2,870 |
| 9 | 04/23/2024 | EL REY I | CASTRO & KENIA | US122763929 | Wire Transfer of $2,850 |
| 10 | 04/23/2024 | EL REY I | CASTRO & KENIA | US122763968 | Wire Transfer of $2,890 |
| 11 | 04/23/2024 | EL REY II | CASTRO & SURI | US122765599 | Wire Transfer of $2,882 |
| 12 | 04/23/2024 | EL REY II | CASTRO & SURI | US122765487 | Wire Transfer of $2,882 |
| 13 | 04/23/2024 | EL REY II | CASTRO & SURI | US122765345 | Wire Transfer of $2,882 |
| 14 | 04/23/2024 | EL REY II | CASTRO & SURI | US122765176 | Wire Transfer of $2,882 |
| 15 | 04/23/2024 | EL REY II | CASTRO & SURI | US122765093 | Wire Transfer of $2,882 |
| 16 | 04/23/2024 | EL REY II | CASTRO & SURI | US122765007 | Wire Transfer of $2,882 |
| 17 | 04/23/2024 | EL REY II | CASTRO & SURI | US122764791 | Wire Transfer of $2,870 |
| 18 | 04/23/2024 | EL REY II | CASTRO | US122786985 | Wire Transfer of $2,882 |
| 19 | 04/23/2024 | EL REY II | CASTRO | US122785742 | Wire Transfer of $2,882 |
| 20 | 04/23/2024 | EL REY II | CASTRO | US122779065 | Wire Transfer of $2,582 |
| 21 | 04/23/2024 | EL REY II | CASTRO | US122778376 | Wire Transfer of $2,600 |
| 22 | 04/23/2024 | EL REY II | CASTRO | US122776603 | Wire Transfer of $2,482 |
| 23 | 04/23/2024 | EL REY II | CASTRO | US122774327 | Wire Transfer of $2,482 |
| 24 | 05/02/2024 | EL REY II | CASTRO | US123145648 | Wire Transfer of $1,385 |

All in violation of Title 18, United States Code, Sections 1956(a)(3), and 2.

The Grand Jury further charges:

COUNT 25

*(Possession of a Firearm by a Prohibited Person)*

32.    On or about December 4, 2024, in the Western District of Kentucky, Jefferson County, Kentucky, the defendant, **JOSE MALAGON CASTRO**, knowingly possessed, in and affecting commerce, a firearm, that is: 1) an Aguirre Y Aranzabal (AYA), model 4/53, 12-gauge shotgun bearing serial number 511460; 2) a Marlin Firearms Company, model 336W, 30-30 rifle bearing serial number MR62981G; 3) a Henry Repeating Rifle Company, model H004GE Golden Eagle, .22lr rifle bearing serial number GE000828; 5) a Maverick Arms, model 88, 12-gauge shotgun bearing serial number MV0874810; 6) a Colt, model King Cobra, .357 magnum revolver, bearing serial number RA226632; 7) a Smith & Wesson, model CSX, 9mm pistol bearing serial number SBC9395; and 8) ammunition, with knowledge that he was an alien illegally and unlawfully in the United States.

In violation of Title 18, United States Code, Sections 922(g)(5)(A) and 924(a)(8).

NOTICE OF FORFEITURE

As a result of committing offenses in violation of Title 18, United States Code, Section 1956, as alleged in this Indictment, felonies punishable by imprisonment for more than one year, the defendants, **JOSE MALAGON CASTRO, VANESSA AVILA GALAVIZ, JOSE MARTIN ROMERO, YEIMI HERNANDEZ BARAHONA, KENIA HERNANDEZ BARAHONA, KELIN HERNANDEZ BARAHONA,** and **SURI ROSMERI HERNANDEZ DEL CID** shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property constituting or derived from any proceeds obtained, directly or indirectly,

as the result of any such violations, and any property involved in, used or intended to be used, in any manner or part, to commit or to facilitate the commission of such violations, including but not limited to: a total of $516,800.00 in United States Currency seized from **JOSE MALAGON CASTRO**.

A TRUE BILL.

**Redacted**

MICHAEL A. BENNETT
UNITED STATES ATTORNEY

MAB:MAC 4/16/2025

UNITED STATES OF AMERICA v. **JOSE MALAGON CASTRO, VANESSA AVILA GALAVIZ, JOSE MARTIN ROMERO, YEIMI HERNANDEZ BARAHONA, KENIA HERNANDEZ BARAHONA, KELIN HERNANDEZ BARAHONA,** and **SURI ROSMERI HERNANDEZ DEL CID**

**P E N A L T I E S**

| | |
|---|---|
| Count 1: | NM 20 yrs./greater of $500,000 or twice value of funds involved/both/NM 3 yrs. Supervised Release |
| Counts 2-4: | NM 20 yrs./greater of $500,000 or twice value of funds involved/both/NM 3 yrs. Supervised Release (Each Count) |
| Counts 5-24: | NM 20 yrs./$500,000/ NM 3 yrs. Supervised release (Each Count) |
| Count 25: | NM 15 yrs./$250,000/both/NM 3 yrs. Supervised Release |
| FORFEITURE | |

**N O T I C E**

**ANY PERSON CONVICTED OF AN OFFENSE AGAINST THE UNITED STATES SHALL BE SUBJECT TO SPECIAL ASSESSMENTS, FINES, RESTITUTION & COSTS.**

SPECIAL ASSESSMENTS

18 U.S.C. § 3013 requires that a special assessment shall be imposed for each count of a conviction of offenses committed after November 11, 1984, as follows:

| Misdemeanor: | $ 25 per count/individual | Felony: | $100 per count/individual |
|---|---|---|---|
| | $125 per count/other | | $400 per count/other |

FINES

In addition to any of the above assessments, you may also be sentenced to pay a fine. Such fine is due immediately unless the court issues an order requiring payment by a date certain or sets out an installment schedule. You shall provide the United States Attorney's Office with a current mailing address for the entire period that any part of the fine remains unpaid, or you may be held in contempt of court. 18 U.S.C. § 3571, 3572, 3611, 3612

**Failure to pay fine as ordered may subject you to the following**:

1.  **INTEREST** and **PENALTIES** as applicable by law according to last date of offense.

    For offenses occurring after December 12, 1987:

    No **INTEREST** will accrue on fines under $2,500.00.

    **INTEREST** will accrue according to the Federal Civil Post-Judgment Interest Rate in effect at the time of sentencing. This rate changes monthly. Interest accrues from the first business day following the two week period after the date a fine is imposed.

    **PENALTIES** of:

    10% of fine balance if payment more than 30 days late.

    15% of fine balance if payment more than 90 days late.

2.  Recordation of a **LIEN** shall have the same force and effect as a tax lien.

3.  Continuous **GARNISHMENT** may apply until your fine is paid.

18 U.S.C. §§ 3612, 3613

    If you **WILLFULLY** refuse to pay your fine, you shall be subject to an **ADDITIONAL FINE** of not more than the greater of $10,000 or twice the unpaid balance of the fine; or **IMPRISONMENT** for not more than 1 year or both. 18 U.S.C. § 3615

RESTITUTION

If you are convicted of an offense under Title 18, U.S.C., or under certain air piracy offenses, you may also be ordered to make restitution to any victim of the offense, in addition to, or in lieu of any other penalty authorized by law. 18 U.S.C. § 3663

APPEAL

If you appeal your conviction and the sentence to pay your fine is stayed pending appeal, the court shall require:

1.      That you deposit the entire fine amount (or the amount due under an installment schedule during the time of your appeal) in an escrow account with the U.S. District Court Clerk, or

2.      Give bond for payment thereof.

18 U.S.C. § 3572(g)

PAYMENTS

If you are ordered to make payments to the U.S. District Court Clerk's Office, certified checks or money orders should be made payable to the Clerk, U.S. District Court and delivered to the appropriate division office listed below:

| | |
|---|---|
| LOUISVILLE: | Clerk, U.S. District Court<br>106 Gene Snyder U.S. Courthouse<br>601 West Broadway<br>Louisville, KY 40202<br>502/625-3500 |
| BOWLING GREEN: | Clerk, U.S. District Court<br>120 Federal Building<br>241 East Main Street<br>Bowling Green, KY 42101<br>270/393-2500 |
| OWENSBORO: | Clerk, U.S. District Court<br>126 Federal Building<br>423 Frederica<br>Owensboro, KY 42301<br>270/689-4400 |
| PADUCAH: | Clerk, U.S. District Court<br>127 Federal Building<br>501 Broadway<br>Paducah, KY 42001<br>270/415-6400 |

If the court finds that you have the present ability to pay, an order may direct imprisonment until payment is made.